# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**LINNELL SHELTON,**<br><br>  **Defendant.** | **Case No. 25-MJ-110 (MAU)** |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm) and under 18. U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole), as the Defendant, Linnell Shelton, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). The Defendant stands before this Court charged with illegally possessing a handgun with thirteen rounds of ammunition after he pleaded guilty just two years ago to Voluntary Manslaughter in 2019 CF1 9154,[1] for which he is currently on supervised release. Even more troubling, the defendant possessed the firearm while apparently suffering a drug overdose just blocks away from the United States Capitol. The Defendant's troubling criminal history, as well as his prior noncompliance with conditions of release, puts the community at risk. Pursuant to 18 U.S.C. § 3142(g), the relevant factors support pretrial detention.

---

[1] The offense occurred on June 22, 2019, and the defendant was arrested on July 10, 2019, and held pending trial. The matter was pending trial until January 19, 2023. The defendant accepted a plea during jury selection on January 23, 2023. He was released from incarceration on September 27, 2024.

## **BACKGROUND**

On June 25, 2025, the United States filed a complaint charging the Defendant with Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). On June 27, 2025, an initial appearance was held before the Honorable Magistrate Judge Upadhyaya. After the United States made a motion for pretrial detention, the Court set the detention hearing for July 1, 2025.

### ***The Instant Offense***

On June 21, 2025, at approximately 5:32 PM, while conducting a routine patrol of the area of the area of 1st Street NE and D Street NE in a fully marked United States Capitol Police ("USCP") Cruiser, USCP Officer Daniel Amendola, Badge #6617, observed a male subject, later identified by his driver's license as Linnell Lonnie Shelton (hereafter "the Defendant") lying on his back, breathing slightly, suffering from a potential narcotics overdose. Officer Amendola requested the DC Fire Department to respond to the scene and treat the Defendant.

Officer Amendola attempted to render aid to Defendant by evaluating the Defendant's breathing. While doing so, Officer Amendola observed what appeared to be the rear sights of a handgun in plain sight protruding from the Defendant's waistline-belt area. Officer Amendola disarmed the Defendant by removing a black handgun from the Defendant's person.

On scene, the Defendant was given two doses of Narcan by USCP officers, and later a third dose by DCFD EMS #3, who arrived on scene to treat and evaluate the Defendant. The Defendant was transported by DCFD #8 to Howard University Hospital for further treatment and evaluation.

The Defendant was treated and released from Howard Hospital and transported to USCP HQ's South Door for arrest processing.

A USCP Crime Scene Officer responded to the scene to process and seize the recovered firearm. Photographs were taken documenting the scene and firearm.

Further investigation revealed that the firearm was a Taurus Model G2C, with Serial # TMT29290. The firearm was a nine-millimeter caliber with a fifteen-round magazine, loaded with twelve rounds of ammunition, plus one round loaded in the chamber of the firearm for a total of thirteen rounds.

An NCIC/WALES database check on the firearm with Serial # TMT29290 revealed that the firearm was reported stolen out of Prince George's County, Maryland on April 20, 2022.

The Defendant has a prior felony conviction in the District of Columbia for Voluntary Manslaughter, Case No. 2019 CF1 9154, an offense punishable by more than one year of imprisonment.

### *Defendant's Criminal History*

As previously stated, the Defendant is currently on supervised release for Voluntary Manslaughter in 2019 CF1 9154.[2] According to the factual proffer allocuted to by the Defendant in his plea agreement, the Defendant murdered his friend by shooting him in the head:

> Had 2019 CF1 9154 proceeded to trial, the Government would have proven beyond a reasonable doubt that on June 22, 2019, at approximately 9:49 p.m., in the 600 block of Morton Street NW, Washington, DC, Defendant Linnell Shelton, known as Keith Toney, caused the death of Melton Grant by shooting at him with a firearm, thereby causing injuries from which Melton Grant died the same day on June 22, 2019. Just prior to the shooting, the Defendant and the decedent were hanging out at a neighborhood gathering on the aforementioned block. At some point, a heated argument ensued between these two friends, where the decedent reacted by punching the Defendant and the Defendant immediately responded by pulling out a firearm from his pants or pant pocket and shooting the decedent. The decedent was found by law enforcement on the sidewalk in front of 648 Morton Street NW, bleeding from his gunshot wounds along the side of his head and on his

---

[2] The Defendant was charged under the name Keith Toney, also known as "Linnell Shelton, also known as "Dig," also known as "Digger."

torso. He was transported to Washington Hospital Center and officially pronounced dead at 10:16 p.m. The next day, a medical examiner from the Office of the Chief Medical Examiner in DC conducted an autopsy of the decedent and found the cause of death to be multiple gunshot wounds and the manner of death homicide. From the 600 block of Morton Street NW, where the decedent's body was located, crime scene technicians recovered five .380 caliber cartridge cases. When the Defendant shot the decedent, one of the bullets from the Defendant's firearm struck a bystander, Hunter Echols, who was hospitalized for his gunshot related injuries. The Defendant's use of deadly force against Melton Grant was not justified. This use of deadly force as self-defense was excessive and not objectively reasonable.

*United States v. Keith Toney*, 2019 CF1 9154, Proffer of Facts (January 22, 2023) (filed January 23, 2023). *Exhibit 1.*

The Defendant also has three prior drug distribution convictions in the District of Columbia: 2009 CF2 7031, 2004 FEL 4777, 2001 FEL 956. *Exhibit 2.* Finally, the Defendant has a 1997 drug distribution conviction in Prince George's County in case number CT971270X. *Id.*

### *Defendant's History Under Supervision*

Prior to his arrest for the instant matter, the Defendant was in violation of his supervised release conditions by using a controlled substance. According to the Pretrial Services Report prepared on June 23, 2025, the Defendant tested positive for illicit substances on June 9, 2025. *Id* at 4. Then, on June 21, 2025, officers from the United States Capitol Police found the Defendant suffering from an apparent narcotics overdose just blocks away from the United States Capitol.

Additionally, the Pretrial Services Report notes that the Defendant's Gun Offender Registration is in progress. *Id.* The Defendant's supervision commenced on September 28, 2024, and under D.C. Code § 7-2508.02, the Defendant was required to register as a Gun Offender with the Chief of the Metropolitan Police Department within 48 hours of release.

The Defendant was previously under supervised release for his two previous convictions in 2009 CF2 7031 and 2004 FEL 4777. According to the Pretrial Services Report, the Defendant's

supervision expired satisfactorily in 2009 CF2 7031 on April 23, 2016. *Id.*

In 2004 FEL 4777, the Defendant was originally sentenced to nineteen months incarceration with credit for time served. *Exhibit 3.* However, his supervised release was revoked on March 30, 2007, and the Defendant was sentenced to a term of 12 months of incarceration, with 48 months of supervised release to follow. *Exhibit 2* at 4. That supervision was administratively closed on April 6, 2010. *Id.*

According to the Pretrial Services Report, in 2001 FEL 959, the Defendant's probation was revoked and a sentence of 18 months of incarceration was imposed.

Finally, the Defendant had a Violation of Probation relating to his 1997 conviction in Maryland, resulting in a sentence of 4 years incarceration, with credit for time served and suspended as to all but 18 months, followed by two years' probation.

## LEGAL AUTHORITY AND ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."  *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-

trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and *Williams*, 798 F. Supp. at 36.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a Defendant] as required and the safety of any other person and the community," the Court shall order a Defendant held pending trial. 18 U.S.C. § 3142 (e). The Act provides however, for certain crimes, that there is a rebuttable presumption that no conditions or combination of conditions will assure the safety of the community. *See id.* "For the purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a Defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) because the Defendant is charged with committing a firearm offense. The United States is also seeking detention pursuant to 18. U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole) as the Defendant was on probation in D.C. Superior Court case 2019 CF1 009154 at the time of the instant offense. A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

**I.    The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying a significant penalty. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the evidence is convincing that the Defendant carried a loaded firearm concealed in his pants. The weapon was readily accessible to the Defendant, and it had a chambered round with an additional twelve rounds in the magazine. Even more concerning, the Defendant possessed the firearm while under the influence of narcotics powerful enough to cause an overdose. Here, there is no indication that the weapon was inert or otherwise inoperable.

As a threshold matter, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when Defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a Defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the

circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearm recovered from had many of these troubling characteristics, and more broadly, the firearm was loaded and ready to fire when it was recovered. Simply stated, unlawful gun possession is so problematic, especially by someone with the Defendant's criminal history, because of the number of violent gun crimes committed in the District.

Additionally, the firearm recovered from the Defendant's person was reported stolen out of Prince George's County in 2022. Because the Defendant was prohibited from legally purchasing and owning any firearm due to his prior homicide-related conviction, the Defendant must have resorted to acquiring this gun through illegal channels as well, underscoring that the defendant is not willing to follow the Court's orders to comply with all laws.

## II.    <u>The Weight of the Evidence Against the Defendant is Strong.</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. Here, the Government's case against the Defendant is strong.

First, officers approached the Defendant because they believed, correctly, that he was suffering a medical emergency in which he had lost consciousness from a drug overdose. As officers were attempting to render aid to him, they discovered in plain view that the Defendant had a firearm tucked into his waistband – an inherently dangerous way of carrying a firearm on one's person.

The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S.

Dist. LEXIS 18988, at *29-30.  Instead, "the weight of the evidence against [a] Defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"If the evidence against a Defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that Defendant will flee to avoid future court proceedings and may indicate that the Defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight and strength of the evidence increases the prospect that the Defendant will present a danger to the community if released.


### III.    The Defendant's History and Characteristics Merit Detention.

The third factor, the Defendant's history and characteristics weigh heavily in favor of detention. The Defendant was convicted of an extremely serious and violent crime that he committed relatively recently. The plea allocution from the Defendant's prior conviction for Voluntary Manslaughter shows not only the Defendant's willingness to carry a firearm in the community, but his ability to use that illegal firearm for violence. The defendant pled guilty to facts where produced that firearm without legal justification and shot and killed a member of this community – and a friend of his no less. The Defendant was released from prison on September

27, 2024. Less than one year after being released from prison for that offense, while under supervised release and despite being legally forbidden from possessing or carrying any firearms, the Defendant was using illegal substances and yet again illegally possessed a gun in the community. Accordingly, the Defendant's history and characteristics suggest that he will continue to carry loaded firearms in public.

Moreover, leading up to the offense, the Defendant was not compliant with his supervised release. As discussed above, the Defendant had begun using drugs in the community, testing positive on June 9, 2025. The Defendant was clearly aware of the test results, having been scheduled for a substance abuse assessment on June 11, 2025. Despite the assessment, the Defendant apparently continued to use drugs in the community, resulting in his overdose on June 21, 2025.

Finally, the Defendant has more often than not failed to comply with supervised release or probation throughout his adult life. Though the instances of non-compliance date back to the early 2000's and late 1990's, the defendant's probation has been revoked in three of his five prior narcotics- related convictions. And as discussed above, he was not in compliance with his most recent supervised release conditions. Therefore, there is no reason to believe that he would comply with the Court's conditions should he be released in this case. As a result, this prior performance weighs against his release in the community.

## IV.    The Defendant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by the Defendant's release, overwhelmingly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is

10

unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at \*33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the Defendant presents an extreme safety risk to the public."). As noted above, the Defendant has previously engaged in this exact behavior, with horrible consequences. This alone poses a danger posed to the community. Add to that the Defendant's unwillingness to abide by his conditions of supervised release, this Court is presented with an individual who is a danger to the citizens living within the District.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here the Defendant poses an obvious and articulable threat to the community, as evidenced by his recidivism and his failure to obey court orders.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


By:   _s/ Travis Wolf_____
TRAVIS WOLF
Assistant United States Attorney
NY Bar No: 5483243
United States Attorney's Office
601 D Street, NW
Washington, D.C. 20530
Telephone: 202-803-1670
Travis.Wolf@usdoj.gov

12